```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
NATIONAL IMMIGRATION PROJECT OF THE  :
NATIONAL LAWYERS GUILD, AMERICAN     :
CIVIL LIBERTIES UNION FOUNDATION,    :
IMMIGRANT DEFENSE PROJECT, POST-     :
DEPORTATION HUMAN RIGHTS PROJECT,    :
and RACHEL ROSENBLOOM,               :
                                     :   11-cv-3235 (JSR)
     Plaintiffs,                     :
                                     :   MEMORANDUM ORDER
          -v-                        :
                                     :
UNITED STATES DEPARTMENT OF HOMELAND :
SECURITY, UNITED STATES CITIZENSHIP  :
AND IMMIGRATION SERVICES, UNITED     :
STATES IMMIGRATION AND CUSTOMS       :
ENFORCEMENT, UNITED STATES DEPARTMENT:
OF JUSTICE, UNITED STATES DEPARTMENT :
OF STATE,                            :
                                     :
     Defendants.                     :
------------------------------------x
```



JED S. RAKOFF, U.S.D.J.

This case arises from plaintiffs' efforts to obtain, pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, extensive records relating to the Office of the Solicitor General's ("OSG") representation in a 2009 brief to the Supreme Court that, "[b]y policy and practice, the government accords aliens who were removed pending judicial review but then prevailed before the courts effective relief by, inter alia, facilitating the aliens' return to the United States by parole under 8 U.S.C. 1182(d)(5) if necessary, and according them the status they had at the time of removal." Brief for Respondent at 44, Nken v. Holder, 556 U.S. 418 (2009) (No. 08-681), 2009 WL 45980 at *44. This Court presumes familiarity with

1

the three previous summary judgment opinions it has issued in this matter. This fourth and final round of summary judgment motions seeks to resolve all remaining issues in dispute between the parties.

In its most recent summary judgment opinion, the Court ordered defendants to search the email records of attorneys at the Office of Immigration Litigation ("OIL") for documents responsive to plaintiffs' FOIA request. See Nat'l Immigration Project v. Dep't of Homeland Sec., No. 11 Civ. 3235, 2012 WL 6809301, at *8 (S.D.N.Y. Dec. 27, 2012), reconsideration denied, 2013 WL 1947362 (S.D.N.Y. May 7, 2013). On August 21, 2013, defendants ran an automated search of those records for agreed-upon search terms and, following a review of nearly two hundred thousand documents, proceeded to make rolling productions of responsive materials to plaintiffs. See Declaration of James M. Kovakas dated July 16, 2014 ("Kovakas Decl.") ¶ 5. From those productions, defendants withheld, in whole or in part, various documents pursuant to FOIA Exemptions 5, 6, 7(C), and 7(E). Id. ¶ 5-6. Plaintiffs now move for summary judgment seeking the release of twenty-seven such documents. Defendants cross-move for summary judgment, arguing that the twenty-seven documents are protected by the work product, attorney-client, and deliberative process privileges under FOIA Exemption 5, 5 U.S.C. § 552(b)(5).

"Summary judgment is the preferred procedural vehicle for resolving FOIA disputes." Bloomberg L.P. v. Bd. Of Governors of Fed.

2

Reserve Sys., 649 F. Supp. 2d 262, 271 (S.D.N.Y. 2009). In order to prevail on summary judgment, "the defending agency has the burden of showing that … any withheld documents fall within an exception to the FOIA." Carney v. Dep't of Justice, 19 F.3d 807, 812 (2d Cir. 1994). The agency may carry this burden by submitting affidavits or declarations that provide "reasonably detailed explanations" of why the claimed exemption applies.[1] Id. The defendants in this case have submitted a "Vaughn" index itemizing the redactions that were made and detailing the asserted exemptions, see Vaughn v. Rosen, 484 F.2d 820, 826-28 (D.C. Cir. 1973). They also offered up the unredacted documents at oral argument, and the Court subsequently reviewed those documents in camera. See Transcript dated Sept. 3, 2014, at 2.

The twenty-seven disputed documents contain communications between OIL, OSG, the Executive Office of Immigration Review ("EOIR"), Immigration and Customs Enforcement ("ICE"), and the Office of the Associate Attorney General, regarding the Government's

---

[1] In FOIA cases, the Court accepts agency affidavits in lieu of the Statement of Material Facts required by Local Civil Rule 56.1. See NAACP Legal Def. and Educ. Fund, Inc. v. Dep't of Hous. and Urban Dev., No. 07 Civ. 3378, 2007 WL 4233008, at *1 n.1 (S.D.N.Y. Nov. 30, 2007). However, it does not follow, as the government contends, that plaintiffs' submission of a Rule 56.1 Statement was procedurally improper or that the Court must disregard it. As the court explained in NAACP, the purpose of the Rule 56.1 Statement is simply to "assist the court in determining which facts are genuinely undisputed." Id. (internal quotation marks and citation omitted). In other words, a Rule 56.1 statement "is not itself a vehicle for making factual assertions that are otherwise unsupported in the record." Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 74 (2d Cir. 2001). The Court will consider plaintiffs' Rule 56.1 Statement accordingly.

3

response to a post-argument order from the Ninth Circuit in the case of Désiré v. Holder, No. 11-15199 (9th Cir. filed Jan. 24, 2011). That case came before the Ninth Circuit in a peculiar posture. The petitioner, Jo Lesly Désiré, was a native and citizen of Haiti who had lived in the United States for many years as a lawful permanent resident. See Désiré v. Mukasey, No. CV 08-1329, 2010 WL 5345349, at *1 (D. Ariz. Dec. 23, 2010). In 2006, he was removed to Haiti on the ground that he had been convicted of selling or transporting a controlled substance, an aggravated felony. Id. The Ninth Circuit subsequently vacated his order of removal, holding that his conviction was not properly classified as an aggravated felony. See Désiré v. Gonzales, 245 Fed. App'x 627, 629 (9th Cir. 2007) (mem. disp.).

Following the Ninth Circuit's ruling, the Board of Immigration Appeals ("BIA") granted ICE's motion to reopen Désiré's removal proceedings and add a new ground of removability. See Désiré, 2010 WL 5345349, at *2. In order to enable him to defend the proceedings, ICE offered, on three separate occasions, to issue Désiré a parole document that would have allowed him to return to the United States. See Memorandum of Law in Opposition to Plaintiffs' Fourth Motion for Partial Summary Judgment and in Further Support of Defendants' Cross-Motion for Summary Judgment dated July 30, 2014, ECF Dkt. No. 86, Ex. 1-B, Declaration of David J. Botten dated June 7, 2013, ¶¶ 5-8. However, Désiré, who was indigent, could not afford international airfare, and ICE refused to pay for his return. See

4

Plaintiffs' Rule 56.1 Statement dated July 16, 2014, ECF Dkt. No. 83 ("Pl.'s Rule 56.1 Statement") Ex. N. Eventually, the parties agreed to administratively close the proceedings while Désiré attempted to raise the funds necessary for his travel to the United States. Id. Ex. O.

Meanwhile, with his removal proceedings pending in Immigration Court, Désiré filed a petition for habeas corpus in the United States District Court for the District of Arizona, arguing that the reopening of his proceedings violated both res judicata and ICE regulations. Désiré, 2010 WL 5345349, at *1. The District Court denied his petition, and he appealed. Id. at *3-4. Following oral argument, the Ninth Circuit ordered supplemental briefing on procedural and jurisdictional questions presented by Désiré's predicament, including "whether the Immigration Judge would have jurisdiction to conduct the reopened removal proceedings while Petitioner-Appellant remains outside the country." Pl.'s Rule 56.1 Statement, Ex. Q. Before the supplemental briefing was due, the government decided to return Désiré to the United States at government expense and withdrew the charges of removability against him, thereby mooting his appeal. See Pl.'s Rule 56.1 Statement ¶ 30 & Ex. R. It therefore never responded to the Ninth Circuit's question. Id.

The Government did, however, engage in extensive communications regarding the preparation of its response. At issue in the instant cross-motions for summary judgment are the contents of those

5

communications, found in the twenty-seven documents sought by plaintiffs. Defendants argue that they properly withheld the Désiré documents pursuant to FOIA Exemption 5, which protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption incorporates traditional discovery privileges, such as the work-product doctrine and the attorney-client privilege, as well as the deliberative process privilege, which covers "decision making processes of government agencies" NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 150 (1975) (citation omitted). Defendants assert that all twenty-seven documents are protected by the work-product doctrine and the deliberative process privilege, and that three of the twenty-seven are additionally protected by the attorney-client privilege. See Kovakas Decl. Ex. B.

The Court first considers the work-product doctrine. This doctrine exempts from disclosure "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)(A). Its purpose is "to avoid chilling attorneys in developing materials to aid them in giving legal advice and in preparing a case" for litigation. In re John Doe Corp., 675 F.2d 482, 492 (2d Cir. 1982). In this case, the materials in dispute are plainly "documents … prepared in anticipation of litigation," as they consist of marked-up drafts and discussions among attorneys at various agencies

6

regarding the government's response to the Ninth Circuit's post-argument order. Indeed, plaintiffs do not seriously dispute that the documents are work product, arguing instead that the documents should be released either under the crime-fraud exception to the work-product doctrine or pursuant to the so-called "fairness doctrine."

"The crime-fraud exception strips [any] privilege from attorney-client communications that 'relate to client communications in furtherance of contemplated or ongoing criminal or fraudulent conduct.'" In re John Doe, Inc., 13 F.3d 633, 636 (2d Cir. 1994) (quoting In re Grand Jury Subpoena Duces Tecum dated Sept. 15, 1983, 731 F.2d 1032, 1038 (2d Cir. 1984)). This exception also applies to materials prepared by a lawyer to the extent that the "client consult[ed] the lawyer or use[d] the material for the purpose of committing a crime or fraud." See In re Sealed Case, 107 F.3d 46, 51 (D.C. Cir. 1997). Plaintiffs contend that the documents come within the ambit of the crime-fraud exception because they relate to the government's ongoing efforts to deceive the courts about the effectiveness of ICE Directive 11061.1, Facilitating the Return to the United States of Certain Lawfully Removed Aliens (Feb. 24, 2012), Pl.'s Rule 56.1 Statement Ex. C (the "ICE Directive"). The ICE Directive, which issued shortly after this Court's first summary judgment opinion in this case, sets forth the government's policy of returning to the United States certain aliens who prevail on judicial review after being deported. See Nat'l Immigration Project

7

v. Dep't of Homeland Sec., 868 F. Supp. 2d. 284, 288-89 (S.D.N.Y. June 25, 2012). It provides, in part:

> [I]f an alien who prevails before the U.S. Supreme Court or a U.S. court of appeals was removed while his or her [Petition for Review] was pending, ICE will facilitate the alien's return to the United States if either the court's decision restores the alien to lawful permanent resident (LPR) status, or the alien's presence is necessary for continued administrative removal proceedings…. If the presence of an alien who prevails on his or her PFR is not necessary to resolve the administrative proceedings, ICE will not facilitate the alien's return.

ICE Directive ¶ 2.

On April 24, 2012, OSG sent a letter to the Supreme Court explaining that the ICE Directive was intended to "affirm[] the agency's commitment to facilitate return and provid[e] greater detail about the circumstances and process under which ICE will do so." Letter from Michael R. Dreeben, Deputy Solicitor Gen., to William K. Suter, Clerk, Supreme Court of the U.S. (Apr. 24, 2012), Pl.'s Rule 56.1 Statement Ex. D, at 4. In its letter, OSG assured the Supreme Court that, "[s]ince the middle of February 2012," the government had "refrained from relying on the Court's statement in Nken in responding to applications to stay removal pending judicial review." Id. at 5. Instead, it would rely on the ICE Directive so that lower courts would "have the opportunity to address the adequacy of the government's procedures for facilitating return in evaluating requests for stays of removal." Id. Plaintiffs allege that, to the contrary, the government continued to rely on Nken in

8

its oppositions to stay requests until early 2013; in support of this assertion, plaintiffs have appended excerpts of a dozen or so such opposition briefs. Pl.'s Rule 56.1 Statement ¶ 17 & Ex. H. In mid-2013, plaintiffs allege, the government sent a series of letters to courts clarifying that it was now relying on the ICE Directive, not Nken, for the proposition that an alien who is deported pending judicial review will suffer no irreparable harm. Id. ¶ 32 & Ex. S. Since then, the government has argued to the courts in numerous cases that a stay of removal is not warranted because, should the alien prevail after being removed, the ICE Directive will provide effective relief. Id. ¶¶ 33-34 & Exs. T, U.

Plaintiffs contend that the Désiré documents demonstrate that the government, by arguing that the ICE Directive provides effective relief, is engaged in an ongoing fraud on the courts. As plaintiffs do not have access to the unredacted documents, their argument is based on extrapolation from the portions of the documents that have been disclosed, such as email subject lines and fragments of discussions. See Memorandum of Law in Support of Plaintiffs' Fourth Motion for Partial Summary Judgment dated July 16, 2014, at 12-15. For example, plaintiffs cite email subject lines such as "About Nken problem" and "Meeting to Discuss Désiré and Nken," as well as a partial email stating that OIL "would like to understand how EOIR's position works with the ICE Directive." Id. Based on these partial documents, plaintiffs hypothesize that the Désiré documents reveal some undisclosed jurisdictional problem that would prevent EOIR from

9

adjudicating the cases of aliens located abroad. This problem, plaintiffs contend, would ensnare deported aliens in a Catch-22: ICE would agree to return an alien to the United States only if she prevailed in her proceedings before EOIR, but EOIR would have jurisdiction to conduct said proceedings only if ICE first returned the alien to the United States. Plaintiffs assert that, having learned of this problem during the Désiré appeal in mid-2013, the government continues to represent to the courts that the ICE Directive provides effective relief, knowing full well that it does not. This deception, they argue, is sufficient to justify application of the crime-fraud exception.

As an initial matter, the Court is skeptical of the government's contention that the crime-fraud exception has no applicability in the FOIA context. The government relies on Federal Trade Commission v. Grolier, 462 U.S. 19, 27-28 (2000), in which the Supreme Court held that FOIA Exemption 5, unlike the Federal Rules of Civil Procedure, does not permit disclosure of work product based on the requester's showing of substantial need. But it does not follow that FOIA Exemption 5 encompasses no exceptions to the work product doctrine, and this Court has already recognized as much in its first summary judgment opinion in this case. See Nat'l Immigration Project v. Dep't of Homeland Sec., 842 F. Supp. 2d 720, 725-26 (S.D.N.Y. Feb. 7, 2012) (applying the "unilateral testimonial use" exception). Unlike the "substantial need" exception invoked in Grolier, the crime-fraud exception does not depend on the

10

particularized circumstances of the requester. Rather, like the work product doctrine itself, it depends on the nature of the materials sought, and therefore does not undermine Congress's effort to "provide 'workable' rules." Grolier, 462 U.S. at 27; see also Conservation Force v. Jewell, No. 12-cv-1665, 2014 WL 4327949, at *10-13 (D.D.C. Sept. 2, 2014) (considering the crime-fraud exception in FOIA context but finding that requester had failed to meet its burden); but see Toensing v. Dep't of Justice, 999 F. Supp. 2d 50, 57 (D.D.C. 2013). Given Congress's intent in enacting FOIA "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny," Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976) (citation omitted), it is utterly implausible to suppose that Congress intended FOIA Exemption 5 to shield government documents when they were created for the purpose of furthering a crime or a fraud.

Nonetheless, the Court, having reviewed the disputed documents in camera, is satisfied that the crime-fraud exception does not apply to these particular documents. The documents reveal neither a systematic, undisclosed problem with the ICE Directive nor a conspiracy to mislead the United States judiciary.

More troubling to the Court is the government's refusal to fund the return of indigent aliens who, like Désiré, lack the means to return to the United States to litigate their remanded proceedings. For many such aliens, the financial burden of removal may, as a practical matter, preclude effective relief. The government responds

11

that an alien is free to raise this possibility in his motion to stay removal. See Transcript dated Sept. 3, 2014, at 19. However, it is precisely the indigent petitioner, who cannot afford counsel and lacks the sophistication to advocate on his own behalf, who is most likely to be harmed by the government's refusal to fund his return. Nevertheless, the government cannot be said to have fraudulently concealed this fact; the ICE Directive itself acknowledges that, "Facilitating an alien's return does not necessarily include funding the alien's travel via commercial carrier to the United States." ICE Directive ¶ 3.1. Accordingly, there is no basis to apply the crime-fraud exception in this case.

Even if the documents did reveal evidence of government wrongdoing, moreover, plaintiffs' showing would be insufficient. Plaintiffs' argument is, in effect, that the Désiré documents should be released because they reveal that the government is lying in other cases. But the exception does not apply "simply because privileged communications would provide an adversary with evidence of a crime or fraud." In re Richard Roe, Inc., 68 F.3d 38, 40 (2d Cir. 1995). Instead, the exception applies "only when the court determines that the client communication or attorney work product in question was itself in furtherance of the crime or fraud." Id. Plaintiffs have not alleged, much less shown, that the discussions among attorneys handling the Désiré case somehow furthered the government's efforts to deceive the courts in other, unrelated, cases. At most, the Désiré documents would provide evidence that the

12

government's submissions in those other cases were knowingly false. That alone would not justify application of the crime-fraud exception.

Plaintiffs argue, in the alternative, that the factual portions of the Désiré documents should be released pursuant to the "fairness doctrine." Their contention is that, because the government regularly asserts in stay litigations that the ICE Directive provides effective relief to deported aliens, it cannot use the privilege to shield information that proves otherwise. The Court understands plaintiffs to refer to the principle that "implied waiver may be found where the privilege holder 'asserts a claim that in fairness requires examination of protected communications.'" In re Grand Jury Proceedings, 219 F.3d 175, 182 (2d Cir. 2000). This principle holds that "a party cannot partially disclose privileged communications or affirmatively rely on privileged communications to support its claim or defense and then shield the underlying communications from scrutiny by the opposing party." Id.

The problem with plaintiffs' argument is that the government has never affirmatively used the contents of the Désiré documents. The fairness doctrine applies only where a party selectively discloses portions of privileged communications or puts their factual contents at issue in a litigation. See In re von Bulow, 828 F.2d 94, 102 (2d Cir. 1987). It does not allow a party to obtain discovery of privileged materials generated in connection with another, unrelated matter merely because they contain information

13

that would be helpful to its case. Here, plaintiffs contend that disclosure of the information contained in the Désiré documents is necessary to ensure fairness to aliens seeking stays of deportation in other cases pending in other courts. But the government is not alleged to have put the contents of the Désiré documents at issue in those cases. The only alleged connection between the disputed documents and the stay litigations is that they concern the same general subject matter. Under these circumstances, the fairness doctrine does not apply.

For these reasons, the Court concludes that the government properly withheld all the disputed material as attorney work product under FOIA Exemption 5, and need not reach its arguments regarding the deliberative process and attorney-client privileges. Accordingly, plaintiffs' motion for summary judgment is denied, and defendants' cross-motion for summary judgment is granted.

Since this resolves the only remaining issues in this case, the Clerk of the Court is directed to close the case.

SO ORDERED.

Dated:    New York, NY
          December 2, 2014

JED S. RAKOFF, U.S.D.J.